## STANDARD ACC. INS. CO. v. PERRY COUNTY BOARD OF EDUCATION et al.

### No. 90.

District Court, E. D. Kentucky.

June 20, 1947.

J. W. Craft and Craft & Stanfill, all of Hazard, Ky., for plaintiff.

C. A. Noble, of Hazard, Ky., for defendant Leola Combs, administratrix of Estate of C. Dilce Combs.

FORD, District Judge.

This is an action under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, presenting for determination only the question as to the coverage of an automobile liability insurance policy. By agreement of the parties the case is submitted to the Court for a declaratory judgment upon the

facts set out in the pleadings which are, in substance, as follows:

## Findings of Fact

1. The plaintiff is a corporation organized and existing under the laws of the State of Michigan.

2. The defendant, Perry County Board of Education, is a body corporate under the laws of the State of Kentucky, and defendant Leola Combs, administratrix of the estate of C. Dilce Combs, is a citizen and resident of the State of Kentucky.

3. This is a suit of a civil nature involving an actual present controversy in respect to a matter which exceeds, exclusive of interest and costs, the sum or value of Three Thousand Dollars ($3,000).

4. "On or about April 1, 1946, * . * * C. Dilce Combs, who at that time was a member of the defendant, Perry County Board of Education, entered a school bus of the defendant, Board of Education, at Hazard, Kentucky, for the purpose of riding therein to his home at Happy in Perry County, Kentucky; that as said bus was being driven by an employee of the defendant, Perry County Board of Education, near Lothair in Perry County, Kentucky, it came in contact with a truck parked near to and partially on the highway being traversed by said school bus at said time and upon said occasion and as a result thereof the said C. Dilce Combs sustained personal injuries which soon thereafter caused his death." (Par. 5 of plaintiff's petition.)

"The said C. Dilce Combs resided at Happy, Perry County, Kentucky, which was a distance of some ten miles south of Hazard, Kentucky, and he had been engaged during the day in procuring some deeds to Perry County Board of Education north of Hazard, and he returned to the Administration Building of said Perry County Board of Education in the afternoon, and was in the act of leaving said Administration Building when M. C. Napier, Superintendent of Schools of Perry County Board of Education informed the deceased that the County Board of Education's school bus was then about to depart from Hazard enroute to Vicco, Perry County, Kentucky, a point south of Hazard and beyond the deceased's home, and

said M. C. Napier invited the deceased to ride said school bus to his home, and said M. C. Napier took the deceased in his car and caught the said school bus and invited and placed the deceased upon said school bus with instructions to the driver thereof to convey the deceased to his home. * * * the school bus on that occasion was going to Vicco to convey school children therefrom back to Hazard, Kentucky, * * *.

" * * * at the time C. Dilce Combs left the Administration Building of the Perry County Board of Education he had completed his duties for that day, * * * and was placed upon said school bus by M. C. Napier, Superintendent of the Perry County Board of Education * * * to be transported to his home south of Hazard, Kentucky, the direction in which said bus was traveling at the time of the injuries and death of the said C. Dilce Combs." (Amended Separate Answer of defendant Leola Combs, Administratrix).

5. On July 21, 1945, plaintiff, Standard Accident Insurance Company, issued and delivered to the defendant, Perry County Board of Education, the named insured, its standard automobile liability policy No. JC 414242, to which was attached a so-called "Kentucky Standard School Bus Endorsement", by the terms of which the plaintiff agreed to pay any final judgment which might be rendered against the insured for bodily injury to any person due to the negligence of the agents or employees of the Perry County Board of Education in the operation or use of any vehicle used as a school bus as therein defined, not to exceed Five Thousand Dollars ($5,000), the limit of the coverage stated in the policy. The policy was in full force and effect at the time of the injury which resulted in the death of C. Dilce Combs and it applied to the school bus upon which he was riding.

6. The standard policy form, to which the Kentucky Standard School Bus Endorsement is attached, contains the following provision:

"IV. Definition of 'insured'—The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages (includes the named insured and, ex-

cept where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply: (a) to injury to or death of any person who is a named insured; * * *."

Provisions of the "Kentucky Standard School Bus Endorsement" are as follows:

"It is hereby agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to the automobile classified as 'School Bus,' subject to the following provisions.

"1. The insurance shall apply, if the automobile is of the bus or commercial type, to the Named Insured, and/or to the Board of Education in his or their individual or official capacity, and/or to the owner, and/or the operator or driver, and/or the substitute operator, and/or substitute driver, as insured; and if the automobile is of the private passenger type, the definition of 'insured' agreement of the policy applies to the insurance under this endorsement in the same manner as though the automobile were classified as 'Pleasure and Business', and

"2. The insurance shall apply, while the automobile is used as a 'School Bus' or for 'Pleasure and Business' as defined in the policy, but shall not apply to the use of said automobile for general delivery or any other passenger carrying purposes; and

"3. 'School Bus' use is defined as (a) The transportation of school children, students and teachers to and from school, school games and school outings; (b) the incidental transportation of guests or guardians of school children in connection with any school activity; and (c) operation necessary and incidental to such transportation which has been authorized by the Board of Education or its administrative officer, the superintendent; and

"4. The insurance shall apply to other automobiles or vehicles which may be temporarily substituted for the automobile used as a 'school bus', provided such substitution is necessitated because of weather conditions, mechanical breakdown or damage to the automobile and may continue to be used only while the automobile is thus withdrawn from use. If permanent substitution is made, notice of such permanent substitution must be given to the company within thirty days following the date of substitution; and

"5. The insurance does not apply, if the automobile is of the bus or commercial type, to injuries sustained by persons while riding in the automobile, other than those enumerated in the definition of 'school bus' used herein; and

"6. The insurance shall apply if the school term is extended beyond the expiration date of this policy by reason of the school having been closed during the regular school term; the liability and/or property damage coverage of this policy shall be extended likewise for such extended school term; and

"7. The insurance shall apply to cover the legal liability of the insured for accidents causing bodily injury and/or death to any person acting under the instruction of school authorities and/or the driver of the school bus insured hereunder to direct traffic while the said school bus has been stopped for the purpose of taking on or discharging school children or stopping at railroad crossings or any other necessary stop; and

"8. It is understood and agreed that any error or omission for unintentional violation of warranty by the assured shall not invalidate the coverage; and

"9. It is understood and agreed that in the event of a claim arising under the coverage afforded by this policy by virtue of this endorsement, the company will not interpose the defense, except at the request of the insured board of education, that the insured board is engaged in the performance of a governmental function; and

"10. In consideration of the premium stipulated in the policy to which this endorsement is attached, the insurer agrees to pay any final judgment which may be rendered against the insured for bodily injury to any person, and for property dam-

age to any property due to the negligence of the insured, his or its agents, servants or employees in the operation or use of any vehicle used as a 'school bus' as defined in Article 3 of this endorsement or any substituted or emergency vehicle as permitted by Article 4 of this endorsement, within the limits of coverage stated in the policy. The insurer further agrees that upon its failure to pay any final judgment within sixty (60) days from the date of its rendition or final affirmance or appeal, the judgment creditor may maintain an action against it in any court of competent jurisdiction to enforce such payment. This policy shall constitute a continuing indemnity, the amount of which shall not be reduced as to any succeeding claim by any payment of any claim or any claim or any judgment or by any previous accident.

In the event of the insolvency or bankruptcy of the insured, the insurer shall not be relieved of the payment of such indemnity hereunder as would have been payable but for the insolvency or bankruptcy; and

"11. It is agreed that the policy to which this endorsement is attached shall not be canceled or changed until after fifteen (15) days' notice in writing has been given by the insurer to the insured District Board of Education, the individual named in the policy as the insured, and the Superintendent of Public Instruction. Said fifteen (15) days' notice to begin with the date the notice is actually received at the office of the Superintendent of Public Instruction, Frankfort, Kentucky, as evidenced by return receipt of registered letter.

"12. It is agreed that any provisions, either in the body of the policy to which this endorsement is attached, or in any other endorsement thereon or attached thereto, in conflict with or contrary to the provisions of this endorsement shall be deemed to be canceled hereby.

"This endorsement shall take effect July 21, 1945, 12:01 A. M., Standard Time, or Standard War Time, at Assured's address, and shall terminate simultaneously with this Policy.

"Nothing herein contained shall vary, alter, waive or extend any provision or condition of the Policy, other than as above stated.

"To be attached to and form a part of Policy No. JC 414242 issued to Perry County Board of Education, Hazard, Kentucky."

7. At the time of the institution of this action the defendant, Leola Combs, as administratrix of the estate of C. Dilce Combs, was threatening to institute and claimed the right to institute and prosecute an action in the Circuit Court of Perry County, Kentucky, against the Perry County Board of Education to secure a judgment for the sum of Five Thousand Dollars ($5,000) upon the ground that the death of her intestate, C. Dilce Combs, was the direct and proximate result of the negligence of the driver of the school bus.

### Conclusions of Law

■ 1. The Court has jurisdiction of the parties to this action and the subject matter.

■ 2. The expenditure of public funds for the procurement of insurance against the negligence of the drivers or operators of school busses owned and operated by Boards of Education of the Counties of Kentucky is authorized by section 160.310 of Kentucky Revised Statutes. This statute provides that such liability policies "shall bind the company to pay any final judgment rendered against the insured for * * * death or injury of any school child or *other person*." (Emphasis supplied.)

■ 3. Under the law of Kentucky, neither a County Board of Education nor the individual members thereof are liable for the negligence of an employee of the Board engaged in operating a school bus belonging to the Board. Wallace v. Laurel County Board of Education, 287 Ky. 454, 153 S.W.2d 915.

■ The contract of insurance here involved was obviously entered into with the full knowledge of the legal immunity of the Board and its members from liability for the torts of its agents and employees and with the full understanding that the only protection afforded by the policy was for the benefit of school children or other persons who might suffer injury or death as the result of such negligence, and that the designation of the School Board as "the in-

sured" and permission for the maintenance of a suit against the Board is merely a procedural device for judicial determination as to whether an alleged injury was the proximate result of the negligence of a bus driver and, if so, for the measurement of liability on account thereof. Taylor v. Knox County Board of Education, 292 Ky. 767, 167 S.W.2d 700, 145 A.L.R. 1333.

■ 4. The provision of the statute that coverage of such a policy shall include "any school child or other person" who suffers injury or death as the result of the negligence of a driver of a school bus owned or operated by the Board of Education is mandatory and constitutes a part of the policy as fully and effectively as if written therein. Provisions of the policy designed to restrict liability within narrower limits, being in conflict with the statute, are void. Maryland Casualty Co. v. Baker, 304 Ky. 296, 302, 200 S.W.2d 757; Horn v. Atlas Assurance Society, 241 Ky. 226, 43 S.W.2d 675.

■ 5. The insurance policy in question should not be interpreted so narrowly or technically as to frustrate the obvious design of the Statute under the authority of which it was issued, nor so as to relieve the insurer from a liability fairly within its scope or spirit.

■ 6. When the provisions of a liability insurance policy are found to be so conflicting, ambiguous and confusing as to require interpretation by the Court, that interpretation should be given which will protect the injured party for whose benefit the policy was issued in preference to that which would defeat his claim unless such an interpretation would be unfair, unreasonable and irrational in the light of the real intention of the parties and the Statute under the authority of which it was issued. Republic Life & Accident Insurance Co. v. Hatcher, 244 Ky. 574, 579, 51 S.W.

2d 922; Life & Casualty Co. of Tennessee v. Metcalf, 240 Ky. 628, 631, 42 S.W.2d 909.

■ 7. The provisions of the Kentucky Standard School Bus Endorsement supersede any conflicting provisions of the standard policy form to which the endorsement is attached, and such conflicting provisions of the standard form are, by the provisions of paragraph 12 of the endorsement, deemed to be canceled.

■ 8. The Superintendent of Schools of the Perry County Board of Education, M. C. Napier, was the executive agent and officer of the Board, K.R.S. § 160.370, and as such was in charge of the management and control of the school busses owned and operated by the Board, with authority to direct the operator of the school bus to permit C. Dilce Combs to ride upon the bus and thus save the Board the expense of his transportation, K.R.S. § 160.280. Under the facts and circumstances disclosed, at the time of his injury Combs was lawfully riding upon the school bus while its operation was reasonably necessary and incidental to school activity and he was within the coverage of paragraphs 3, 5 and 10 of the Kentucky Standard School Bus Endorsement, considering such paragraphs together and giving them a fair and reasonable interpretation in the light of the intention and understanding of the parties as to the purpose of the insurance and the protection afforded thereby, as well as within the coverage intended by the Statute.

9. Judgment should be entered herein declaring that at the time of the injury of C. Dilce Combs on or about April 1, 1946, he was within the coverage of the insurance policy issued by the plaintiff, here in question, and the fact that C. Dilce Combs was then a member of the Perry County Board of Education does not relieve or exempt the plaintiff from liability under the policy.