RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0682-MR

DAVON BURKE                                                                 APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM KENTON CIRCUIT COURT<br>HONORABLE KATHLEEN S. LAPE, JUDGE<br>ACTION NO. 22-CI-01156 |  |

KENTON COUNTY FISCAL COURT;                                  APPELLEES
COMBINED PUBLIC
COMMUNICATIONS; I WEB VISIT;
MARC FIELDS; AND KENTON
COUNTY DETENTION CENTER[1]

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND McNEILL, JUDGES.

JONES, A., JUDGE:  Davon Burke ("Burke"), *pro se*, appeals from the April 4,

2023, Order of the Kenton Circuit Court denying his motion for leave to file a

---

[1] The Notice of Appeal named Major Kimberly Grisby and Tracy Adkins as parties to the appeal; however, they were never parties to the case below.  Nonetheless, because the trial court concluded that allowing Burke to amend his complaint to assert claims against them would be futile, we must necessarily examine those potential claims.

second amended complaint, and granting Kenton County, Kentucky's, and Jailer Marc Fields's motion to dismiss. After careful review, we affirm.

## I. BACKGROUND

Burke is currently incarcerated at Little Sandy Correctional Complex in Sandy Hook, Kentucky. At the time of the events giving rise to the litigation, he was incarcerated at the Kenton County Detention Center. Burke alleged that on August 20, 2021, an inmate's wife was able to view inside the prison dormitory restroom during a remote video visitation with her husband and took screenshots of Burke using the restroom. Record ("R.") at 13-16. Burke further alleged that the wife shared those images on social media. *Id.* On August 4, 2022, Burke filed a complaint alleging that an invasion of his privacy occurred because of the negligent hiring, training, and supervision of Kenton County employees or contractors who failed to adequately monitor the video visitation between the inmate and his wife. *Id.* In his complaint, Burke named as defendants Kenton County Fiscal Court, Kenton County Detention Center, Marc Fields ("Jailer Fields"), Combined Public Communications, and I Web Visit.[2] *Id.* at 13. He alleged that his constitutional rights, including his right to privacy, were violated.

---

[2] Combined Public Communications filed a motion to dismiss with the trial court separately from the named Appellees, which was denied. Burke's claims against Combined Public Communications are not at issue in this appeal. Likewise, Burke's claims against I Web Visit are not at issue in this appeal. It is not clear whether I Web Visit has been served with process below.

*Id.* at 13-17.  Burke sought declaratory and injunctive relief,[3] as well as compensatory and punitive damages.  *Id.*

Appellees Kenton County and Jailer Fields removed the case to federal district court on August 22, 2022.  The district court remanded the matter to state court.[4]  At this point, Burke's only remaining claims were state law tort claims against Appellees, Kenton County and Jailer Fields, in their individual capacities.  On October 20, 2022, Burke filed a second motion to amend his complaint, attempting to add Major Kimberly Grisby and Tracey Adkins, both employed by the Kenton County Detention Center, as party-defendants.  R. at 94-97.  On April 4, 2023, the trial court entered an Order of partial dismissal, and denied as futile Burke's motion to amend, based on the doctrine of immunity.  The Order contains finality recitations under Kentucky Rule of Civil Procedure ("CR") 54.02.  This appeal follows.  R. at 139-150.

## I.    STANDARD OF REVIEW

In relevant part, *Mitchell v. Coldstream Laboratories, Inc.*, 337 S.W.3d 643 (Ky. App. 2010), provides:

---

[3] Burke asked that the court order Kenton County Detention Center to install curtains in the restrooms to maintain the inmates' privacy.  R. at 43-48.  This relief was denied by the court, as the Kenton County Detention Center had already moved the video visitation area.  R. at 139-50.

[4] Burke sought leave to file an amended complaint voluntarily dismissing his claims arising under federal law, and the federal district court declined to exercise supplemental jurisdiction over Burke's state law claims.  R. at 43-47; 49-57.

A motion to dismiss is governed by a rigorous and sweeping standard which dictates that it should be granted only where "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky. 1977). When considering the motion, the allegations contained in the pleading are to be treated as true and must be construed in a light most favorable to the pleading party. *See Gall v. Scroggy*, 725 S.W.2d 867 (Ky. App. 1987). The test is whether the pleading sets forth any set of facts which – if proven – would entitle the party to relief. If so, the pleading is sufficient to state a claim. *See* CR 8.01. Since the trial court is not required to make factual findings, the determination is purely a matter of law. *James v. Wilson*, 95 S.W.3d 875 (Ky. App. 2002).

*Id.* at 644-45. Therefore, we review the trial court's decision herein *de novo*.

*Revenue Cabinet v. Hubbard*, 37 S.W.3d 717 (Ky. 2000).

## II. ANALYSIS

Burke raises two issues on appeal. First, Burke argues that Appellees (Jailer Fields, Kenton County Detention Center, and Kenton County Fiscal Court) and as non-parties Major Grisby and Tracey Adkins (collectively "officers"), should not be afforded qualified official immunity. Second, Burke argues that the trial court erred in determining his negligence claims were barred by a one-year statute of limitation, rendering his proposed second amended complaint untimely. Because our answer to Burke's first issue is dispositive, we do not reach the second question.

The Appellees in this case are either entities of the state or employed by the state. As to Kenton County, and Jailer Fields in his official capacity, Burke conceded that the Appellees are protected by sovereign immunity. The concept of sovereign immunity absolutely protects a state from any suit unless the state has waived its immunity. *Yanero v. Davis*, 65 S.W.3d 510, 517-18 (Ky. 2001). Further, the absolute immunity afforded to a state under sovereign immunity is extended to public officials sued in their official capacity. *Id.* Thus, Kenton County and Jailer Fields, in his official capacity, cannot be sued unless they have waived their immunity, which they have not.

While public officers and employees of the state cannot be sued in their official capacities, they can, in certain situations, be sued in their individual capacities. *Yanero*, 65 S.W.3d at 520. The immunity provided to public officials acting in their individual capacities is qualified. Qualified official immunity grants government employees being sued in their individual capacities:

> [P]rotection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am. Jur. 2d, *Public Officers and Employees,* § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employees authority. *Id.* § 309; Restatement (Second) Torts, *supra*, § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion

> with respect to the means or method to be employed. *Franklin County v. Malone*, [957 S.W.2d 195, 201 (Ky. 1997)] (quoting *Upchurch v. Clinton County*, Ky., 330 S.W.2d 428, 430 (1959)).

*Yanero*, 65 S.W.3d at 519. If the officer is able to establish *prima facie* that his acts were performed within his discretionary authority, the burden of proof then shifts to the plaintiff to establish that the officer's acts were completed in bad faith. *Id*. at 523. Furthermore, an officer sued in his individual capacity does not enjoy the protection of qualified official immunity when his negligent acts are ministerial in nature – acts that require "only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*. at 522.

## A. DISCRETIONARY OR MINISTERIAL

An officer performs discretionary acts when the conduct involves "the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Yanero*, 65 S.W.3d at 522. Discretionary duties also include acts that:

> necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Collins v. Commonwealth of Ky. Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122, 125 (Ky. 1999). The Kentucky Supreme Court has previously determined that the supervision of prisoners and the training of jail staff are discretionary in nature. In *Rowan County v. Sloas*, 201 S.W.3d 469 (Ky. 2006), the plaintiff inmate was injured while participating in a jail-led program which allowed inmates to clear brush in exchange for income. The defendant jailer was tasked with monitoring that program. The Court held that the acts of the defendant jail and jailer were discretionary because of the nature in which the plaintiff was injured. *Sloas*, 201 S.W.3d at 480-81. The defendant jailer could only *attempt* to anticipate how the prisoners might act while out on the side of a highway and could only do his best to determine the individual capabilities of the prisoners when it came to their ability to clear brush. The defendant jailer was not mandated to distribute certain tasks to certain inmates to ensure that the plaintiff inmate would not be injured. *Id.* "It is as discretionary a task as one could envision." *Id.*

The same is true of the current case. Pursuant to 501 KAR[5] 3:140 Sec. 1 (9), Jailer Fields and the officers were under no mandated duty to monitor video visitations between inmates and family; "[e]xcept for visitors pursuant to

---

[5] Kentucky Administrative Regulations.

subsection (6) of this section, the jail personnel **may** monitor and record visitor and prisoner conversation for security reasons." (Emphasis added.) Like the defendant jailer from *Sloas*, Jailer Fields could anticipate only so much. He had to exercise discretion in the performance of his duties of monitoring the video visitation or implementing policies under which other jail personnel would do so. It is unrealistic to expect that Jailer Fields anticipate an inmate's wife recording her video visitation in such a way as to capture an exposed Burke and then share those images on social media.[6] There is no evidence that there was mandated training to avoid this specific event that occurred, clearly making the actions discretionary in nature. *Sloas*, 201 S.W.3d at 481.

Thus, the functions, actions, or omissions of which Burke complains were discretionary functions.

## B. GOOD FAITH OR BAD FAITH

"Once [an] officer or employee has shown [*prima facie*] that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the

---

[6] We note that inmates are not entitled to complete privacy while incarcerated. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Burdette v. Commonwealth*, 664 S.W.3d 605, 627-28 (Ky. 2023). But, "a convicted prisoner maintains some reasonable expectations of privacy while in prison . . . even though those privacy rights may be less than those enjoyed by non-prisoners." *Stoudemire v. Michigan Dep't of Corrections*, 705 F.3d 560, 572 (6th Cir. 2013) (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992)). Nonetheless, because we affirm on immunity grounds, we do not reach the merits of Burke's allegations.

discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. Because the existence of "good faith" is shown in the absence of "bad faith," the plaintiff's proof of good faith must focus on showing bad faith. *Sloas*, 201 S.W.3d at 481.

An officer has acted in bad faith when he "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523. Often, bad faith is established by the plaintiff proving the officer violated a "clearly established right," and "a person in the [officer's] position presumptively would have known [that right] was afforded to a person in the defendant's position." *Id.* Bad faith "is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Sloas*, 201 S.W.3d at 483; *Bad faith*, BLACK'S LAW DICTIONARY 176 (rev. 4th ed. 1968).

After finding Jailer Fields, Major Grisby, and Tracey Adkins exercised discretionary authority, the trial court then determined that, even accepting Burke's version of the facts, the motion to dismiss should be granted because Burke had not provided any evidence of bad faith. We agree that there is simply no evidence of bad faith in the jail personnel's implementation of 501 KAR 3:140 Sec. 1 (9).

Burke further claims Appellees violated KRS[7] 531.090 and KRS 531.100, and that their failure to properly monitor video visitation between the inmates and visitors led to screenshots of Burke being posted on the internet. However, the discretionary decision to monitor the video visitation by any jail personnel is not "voyeuristic" because KRS 531.090(2)(b) specifically excludes jail personnel:

> (2) The provisions of subsection (1) of this section shall not apply to:
>
> . . .
>
> (b) An employee of the Department of Corrections, the Department of Juvenile Justice, a private prison, a local jail, or a local correctional facility, whose actions have been authorized for security or investigative purposes.

KRS 531.100 is also inapplicable because Burke is not alleging that jail personnel took or published the pictures taken of him, which are fundamental elements of "video voyeurism." Burke has also failed to provide any supporting evidence for the claims of negligent hiring and improper supervision. Thus, on the record before us, there are no facts which can support a determination of "bad faith."

Finally, the discretionary actions of Jailer Fields, Major Grisby, and Tracey Adkins were within the scope of their authority. Therefore, the record establishes Appellees acted within the scope of their discretionary authority, and

---

[7] Kentucky Revised Statute.

Burke has not plausibly pled that Appellees acted in "bad faith." Jailer Fields and the officers are, thus, entitled to the protection of qualified immunity. The trial court's Order dismissing is affirmed. We do not reach Burke's statute of limitations argument regarding his claim of negligent hiring and supervising under KRS 413.120(6) because these parties have established their entitlement to immunity regardless.

## III. CONCLUSION

For the foregoing reasons, the Kenton Circuit Court's April 4, 2023 Order is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Davon Burke, *pro se*
Sandy Hook, Kentucky

BRIEF FOR APPELLEES:

Christopher S. Nordloh
Covington, Kentucky